Case 5:15-cv-00136 Document 21 Filed in TXSD on 08/11/16 Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
August 11, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| NORMA I. YBARRA, *et al.*, | § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 5:15-CV-136 |
| TEXAS MIGRANT COUNCIL D/B/A TMC TEACHING AND MENTORING COMMUNITIES, | § § § § § | |
| Defendant. | § § | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Texas Migrant Council ("TMC")'s Motion to Compel Arbitration and Dismiss, or Alternatively Stay, Litigation. (Dkt. 9). United States District Judge Diana Saldaña referred the motion to the undersigned to propose factual findings and legal conclusions. (Dkt. 10). For the reasons set forth below, the Magistrate Judge will recommend that the District Court compel arbitration and dismiss the case.

### Background

Plaintiffs Norma Ybarra, Mary Capello, and Rodney Rodriguez worked for TMC until TMC terminated them on various dates between September 2013 and February 2014. In the amended complaint, Plaintiffs assert claims against TMC under Title VII of the Civil Right Acts of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Equal Pay Act, and the Fair Labor Standards Act.[1] Plaintiffs further allege that TMC defamed and slandered them.

---

[1] In a prior lawsuit, *Capello v. Tex. Migrant Council, Inc.*, No. 5:14-CV-11 (S.D. Tex. May 1, 2015), Plaintiffs asserted similar claims against four members of TMC's board of directors. The defendants filed motions to compel arbitration, which Senior United States District Judge George P. Kazen granted. (Dkt. 9, Attachs. 6–7). In the same action, Plaintiff Capello alleged that TMC violated the Family and Medical Leave Act. Judge Kazen granted TMC's motion to compel arbitration. (Dkt. 9, Attach. 3).

On April 1, 2008, while TMC employed Plaintiffs, TMC implemented a Dispute Resolution Policy (the "Policy"). (Dkt. 9, Attach. 21). In the motion to compel arbitration, TMC contends that the Policy contains an enforceable arbitration agreement. (Dkt. 9 at 16–17). Plaintiffs argue that the agreement is illusory and unidentified, (Dkt. 19 at 5, 8), and that the Fair Pay and Safe Workplaces Executive Order, No. 13,673, 79 Fed. Reg. 45,309, precludes arbitration of their claims. (Dkts. 1 at 3; Dkt. 19 at 1–4).

## Discussion

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, requires a court to enforce a valid arbitration agreement. In adjudicating a motion to compel arbitration under the FAA, a court conducts a two-step analysis. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). First, a court must determine whether the parties agreed to arbitrate the dispute in question. *Id.* Second, a court must decide whether legal constraints external to the parties' agreement foreclose arbitration. *Id.* The first step of the analysis raises two sub-questions: (1) whether the parties entered into a valid agreement to arbitrate—a question governed by state contract law, and (2) whether the dispute in question falls within the scope of that agreement. *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014). When a valid arbitration agreement encompasses a dispute and external legal constraints do not foreclose arbitration, a court must compel the parties to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3–4).

A. **The Parties Agreed to Arbitrate Their Dispute.**

Plaintiffs contend that TMC has "failed to identify which arbitration agreement it is attempting to enforce." (Dkt. 19 at 5). Plaintiffs alternatively argue that "the Arbitration Agreement is illusory and unenforceable" because TMC reserved a unilateral right to amend it. (*Id.* at 5, 8). The Court disagrees on both counts.

### 1. TMC Has Identified the Arbitration Agreement.

In the motion to compel, TMC asserts that the Policy "provid[es] for final and binding arbitration of all employment-related claims." (Dkt. 9 at 16). TMC repeatedly cites the Policy and attached it to the motion. (Dkt. 9, Attach. 21). TMC has identified the arbitration agreement that it seeks to enforce.

### 2. The Policy Is Not Illusory.

State law governs the contractual validity of an arbitration agreement. *Lizalde v. Vista Quality Markets*, 746 F.3d 222, 225 (5th Cir. 2014). Under Texas law, consideration must support an agreement to arbitrate. *Id.* The "[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement." *Id.* (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010)).[2] However, when "one party has the unrestrained unilateral authority to terminate its obligation to arbitrate," the agreement is illusory. *Id.* The Fifth Circuit has clarified that an arbitration agreement is not illusory in all cases where a party retains some authority to terminate it. *Id.* at 226. Rather, "retaining termination power does not make an agreement illusory so long as that power 1) extends only to prospective claims, 2) applies equally to both the employer's and employee's claims, and 3) so long as advance notice to the employee is required before termination is effective." *Id.* (citing *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002)).

The Policy satisfies *Lizalde*'s three-prong test. First, the Policy extends only to prospective claims because it states that "[r]evisions to this Policy shall apply only prospectively; in other words, revisions will apply only to those Claims based upon actions or events that occur

---

[2] In the prior lawsuit, *see supra* note 1, Judge Kazen found that: (1) Plaintiffs accepted the Policy by continuing to work at TMC after they received notice of the Policy and after it took effect; and (2) adequate consideration supports the Policy because the parties exchanged mutual promises to arbitrate. (Dkt. 9, Attach. 3 at 3) (citing *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607–08 (Tex. 2005)); *see Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936 (5th Cir. 2007). Because Plaintiffs do not raise these issues, the Court declines to address them and adopts Judge Kazen's rulings.

after the effective date of the revisions." (Dkt. 9, Attach. 21 at 14). Second, TMC's termination power applies equally to TMC and its employees' claims because the Policy provides that "termination shall terminate both TMC's and [an employee's] right to arbitrate under this Policy." (*Id.*). Finally, the Policy meets *Lizalde*'s third prong because it requires TMC to "provide at least 30 days' notice of any termination of the Policy." (*Id.*). Because the Policy constrains TMC's termination power in the manner delineated in *Lizalde*, it is not illusory. Instead, it contains an enforceable agreement to arbitrate.

### 3. Plaintiffs' Claims Fall Within the Policy's Scope.

If a court finds that a valid arbitration agreement exists, it then must determine whether the dispute in question falls within the scope of that agreement. *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014). Here, the Policy explicitly requires the parties to arbitrate claims of employment discrimination, retaliation, slander, defamation, and "[o]ther claims for violation of any federal . . . statute." (Dkt. 9, Attach. 21 at 4). These categories encompass all of Plaintiffs' claims. The Court finds that the dispute in question falls within the scope of the parties' valid arbitration agreement.

### B. External Legal Constraints Do Not Foreclose Arbitration.

Plaintiffs contend that the Fair Pay and Safe Workplaces Executive Order, No. 13,673, 79 Fed. Reg. 45,309 (the "Executive Order"), precludes arbitration of their claims. (Dkt. 1 at 3; Dkt. 19 at 1–4). TMC argues that the Executive Order does not apply because: (1) it took effect after TMC terminated Plaintiffs' employment, and (2) TMC is not a federal contractor. (Dkt. 9 at 5–6). The Court need not address these issues because a final administrative rule has not implemented the Executive Order's relevant provisions.

President Obama signed the Executive Order on July 31, 2014. In section 6(a), the Executive Order provides, in pertinent part, as follows:

> Agencies shall ensure that for all contracts where the estimated value of the supplies acquired and services required exceeds $1 million, provisions in solicitations and clauses in contracts shall provide that contractors agree that the decision to arbitrate claims arising under title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment may only be made with the voluntary consent of employees or independent contractors after such disputes arise.

Exec. Order No. 13,673 § 6(a). Section 7 directs the Federal Acquisition Regulation ("FAR") Council to "propose such rules and regulations and issue such orders as are deemed necessary and appropriate to carry out this order, including sections 5 and 6" and to "issue final regulations in a timely fashion after considering all public comments, as appropriate." *Id.* § 7. Section 10 states that the Executive Order "shall apply to all solicitations for contracts as set forth in any final rule issued by the FAR Council under sections 4(a) and 7 of this order." *Id.* § 10. In other words, pursuant to sections 10 and 7, section 6 does not impose legal requirements on government agencies or contractors until the FAR Council publishes a final rule. *Fellows v. Career Sys. Dev. Corp.*, 2016 WL 4010964, at *6 (W.D. Pa. July 27, 2016).

The FAR Council has not published a final rule. The Department of Defense's list of "Open FAR Cases as of August 5, 2016" includes an entry for the Fair Pay and Safe Workplaces Executive Order. U.S. Dep't of Defense, *Open FAR Cases as of August 5, 2016*, 8 (2016), http://www.acq.osd.mil/dpap/dars/opencases/farcasenum/far.pdf. Under the "status" heading, the entry states, "5/3/2016, Draft final FAR rule concurrently sent to CAAC Legal for review." *Id.* The FAR Council has not implemented the Executive Order. As such, no external legal constraints foreclose arbitration.

The Court finds that the parties agreed to arbitrate their dispute and that no external legal constraints foreclose arbitration. Accordingly, the FAA "leaves no place for the exercise of discretion" but rather requires the Court to compel arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3–4).

## C. Implementation of the Executive Order Will Not Invalidate the Agreement.

Even when the FAR Council implements the Executive Order, the parties' arbitration agreement will remain enforceable. Section 6(a) requires agencies to include certain provisions in certain government contracts. Specifically, in some cases, a government contract (i.e., a contract between a government agency and a contractor) must include a provision whereby the contractor agrees to limit arbitration provisions in its employment contracts (i.e., contracts between the contractor and its employees or independent contractors). Exec. Order No. 13,673 § 6(a). When a contractor agrees to such limitations, the agreement does not affect employment contracts entered-into before the contractor bid on the government contract that triggered section 6(a)'s requirements, unless the contractor "is permitted to change the terms of the [employment] contract, or when the [employment] contract is renegotiated or replaced." *Id.* § 6(c)(ii).

Plaintiffs misread the exceptions listed in section 6(c)(ii). (Dkt. 19 at 4). The exceptions can apply only if a contractor enters into a government contract whereby the contractor agrees, pursuant to section 6(a), to limit arbitration provisions in its employment contracts. Thus, government contracts that predate the Executive Order's implementation date cannot trigger section 6(a)'s requirements, regardless of whether the contractor is permitted to revise, renegotiate, or replace its employment contracts. As applied here, even when the FAR Council implements the Executive Order, section 6(a) will impose legal requirements on TMC only if TMC subsequently enters into a government contract whereby it agrees to limit arbitration provisions in its employment contracts.

Furthermore, even if the FAR Council implements the Executive Order and then TMC enters into a government contract whereby it agrees to limit arbitration provisions in its employment contracts, the parties' arbitration agreement will remain enforceable. A government contract that triggers section 6(a)'s requirements affects a pre-existing employment contract only

if the contractor is permitted to revise, renegotiate, or replace the employment contract. § 6(c)(ii). In this case, TMC cannot revise, renegotiate, or replace its contracts with Plaintiffs because: (i) TMC no longer employs Plaintiffs, and (ii) revisions to the Policy "shall apply only prospectively; in other words, revisions will apply only to those Claims based upon actions or events that occur after the effective date of the revisions."[3] (Dkt. 9, Attach. 21 at 14). Because TMC cannot revise, renegotiate, or replace its contracts with Plaintiffs, the Executive Order will not invalidate the parties' arbitration agreement.

### D.  Dismissal Is Appropriate.

Under the FAA, 9 U.S.C. § 3, "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). The Fifth Circuit has interpreted this language to authorize "dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Id.* (citing *Sea–Land Serv., Inc. v. Sea–Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986)). Here, the Policy requires the parties to arbitrate all of Plaintiffs' claims. *See supra*, Part A.3. Accordingly, the District Court should dismiss this action without prejudice.

### Recommendation

For the foregoing reasons, the Magistrate Judge recommends that the District Court **COMPEL** the parties to arbitrate and **DISMISS** this action without prejudice.

---

[3] TMC terminated Plaintiffs before President Obama signed the Executive Order. Thus, for the reasons set forth in this subsection, the Executive Order would not invalidate the arbitration agreement even if section 6 did not require implementing regulations.

## Objections

The parties may file written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1). If a party objects within fourteen days after the party receives service of this Report, the District Court will review *de novo* the specific findings or recommendations to which the party objects. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996). Otherwise, the party forfeits its right to District Court review. *Thomas*, 474 U.S. at 150. If the District Court accepts this Report's unobjected-to findings and legal conclusions, on appeal such forfeitures will be reviewed only for plain error. *Douglass*, 79 F.3d at 1428.

SIGNED this 11th day of August, 2016.

GUILLERMO R. GARCIA
United States Magistrate Judge